In re 1975–2 GRAND JURY INVESTIGA-
TION OF ASSOCIATED MILK
PRODUCERS, INC.

Appeal of ASSOCIATED MILK
PRODUCERS, INC.

No. 76–4094.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1978.

Rehearing and Rehearing En Banc
Denied March 3, 1978.

Sidney Harris, Washington, D. C., Craig
L. Austin, San Antonio, Tex., Rick A. Har-
rington, Fred B. Klein, Washington, D. C.,
for appellant.

Adrian A. Spears, U. S. Dist. Judge, Le-
roy M. Jahn, Asst. U. S. Atty., San Antonio,
Tex., Richard A. Ringhofer, Atty., Dept. of
Justice, Chicago, Ill., Carl D. Lawson, Atty.,
Dept. of Justice, Peter L. De La Cruz, Rich-
ard A. Green, Washington, D. C., for Na-
tional Farmers.

Before AINSWORTH, SIMPSON and
MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

Associated Milk Producers, Inc. ("AMPI")
appeals from four orders by Chief Judge
Adrian A. Spears of the United States Dis-
trict Court for the Western District of Tex-
as. In the first order, issued February 19,
1975, the district court denied AMPI's mo-
tions to stay grand jury proceedings

brought against it by the Government and to quash or modify a grand jury subpoena arising out of those proceedings. The court also denied AMPI's motions for an evidentiary hearing and for an in camera inspection of certain government documents.[1] In the second order, issued May 6, 1975, the district court denied reconsideration of the motion to stay the grand jury proceedings.[2] In the third order, issued October 1, 1976, the district court, pursuant to Fed.R. Crim.P. 6(e), directed that an inventory of the materials compiled during the grand jury proceedings be sent to the United States District Court for the Western District of Missouri so that it could determine if a "compelling need" existed for the materials in related litigation before that court and, if so, request their transfer.[3] In the fourth order, issued November 4, 1976, the district court, pursuant to Fed.R.Civ.P. 24(a)(2), granted the motion of The Nation-

---

1. The order of February 19 stated:

   The Court having received three motions by Associated Milk Producers, Inc. ("AMPI"), in connection with a grand jury subpoena· served upon it on Feburary 10, 1975, in the above proceeding, namely:
   1. Motion to Modify Subpoena;
   2. Application for *In Camera* Inspection; and
   3. Motion to Stay Grand Jury Proceedings; and the Court being fully advised in the premises,

   IT IS HEREBY ORDERED that:
   1. The motions by AMPI are denied;
   2. The subpoena is Ordered enforced and AMPI is directed to make its return thereto forthwith; and
   3. Government and AMPI counsel are directed to confer forthwith to accomplish AMPI's return expeditiously with a minimum of inconvenience to movant AMPI.

2. The order of May 6 stated:

   On this the 6th day of May, 1975, the Court having fully considered movant Associated Milk Producers, Inc.'s motion for reconsideration of its motion to stay grand jury proceedings, and having received memoranda and heard argument from both movant and the United States,

   IT IS HEREBY ORDERED THAT:
   The motion for reconsideration of AMPI's motion to stay grand jury proceedings be DENIED, and the special attorneys for the Government be permitted to appear and conduct further grand jury proceedings in this cause.

   Entered this the 6th day of May, 1975, at San Antonio, Texas.

3. The order of October 1 stated:

   On this the 1st day of October, 1976, Associated Milk Producers, Inc. (AMPI) having moved that the Court reconsider its order to transfer the grand jury subpoenas, transcripts, and documents in the above captioned matter; and the Court having received motions and memoranda, and heard arguments on this date, not only from movant, but also from The National Farmers' Organization (NFO) and the United States; and it appearing that no party to this action has shown a compelling need for disclosure of all or any particular portion of said grand jury materials; and it further appearing that said materials are exceedingly voluminous, filling no less than 55 large file boxes and one metal filing cabinet; and it further appearing that the indiscriminate transfer of all of said materials to the Western District of Missouri would be impractical, burdensome and premature, especially in view of the failure of any party to demonstrate a particularized or compelling need for disclosure; it is, therefore,

   ORDERED that this Court's August 25, 1976 Order be modified in the following respects:

   (1) The Clerk of this Court is directed to promptly send to Judge John W. Oliver, as transferee judge, an inventory of the grand jury subpoenas, transcripts, and documents for his *in camera* inspection.

   (2) In the event the transferee judge finds at any time that there is a compelling need for all or any part of the said grand jury subpoenas, transcripts and documents, and certifies that the transfer thereof is warranted, the Clerk shall forthwith transfer the requested material to the transferee judge.

   (3) Nothing set forth in this order, or stated in open court on this date, should be construed as any finding by this Court with respect to the relevancy or materiality of, or the need for, the said grand jury materials; it being the intention of this Court that all such matters shall be solely addressed to, and determined by, the transferee judge.

   (4) The Court shall reserve decision on NFO's motion to intervene until AMPI has been afforded a period of ten (10) days from this date to respond thereto, and NFO has been allowed five (5) days thereafter in which to reply to said response.

   (5) All provisions of this Court's order of February 21, 1975, except as they may be in conflict with this order, shall remain in full force and effect, subject to further orders of this Court.

   Entered this the 1st day of October, 1976, at San Antonio, Texas.

al Farmers' Organization, Inc. to intervene as of right in these proceedings relating to transfer of the grand jury materials.[4]

## I. *The Facts*

The genesis of this lengthy and bitterly contested dispute between the Government and AMPI lies in an extensive government investigation of alleged monopolization in the milk industry. This investigation prompted the United States on February 1, 1972 to file a civil antitrust action against AMPI in the United States District Court for the Western District of Texas, Chief Judge Spears presiding. The Government charged AMPI with violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and sought injunctive relief. Fifteen private treble damage antitrust suits were also filed against AMPI in various federal courts during 1971 and 1972. The Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, transferred the private suits for pretrial proceedings to Chief Judge John W. Oliver of the United States District Court for the Western District of Missouri. The cases were designated JPML Docket No. 83, sometimes referred to by the Government as the Midwest Milk Monopolization Litigation. On February 20, 1974, Chief Judge Spears transferred the Government's suit against AMPI to Chief Judge Oliver to coordinate discovery with that in JPML Docket No. 83. The Government's suit was not consolidated with the private actions, however.

In January of 1974 the plaintiffs (one of whom was The National Farmers' Organization, Inc.) in two of the private suits moved pursuant to Fed.R.Civ.P. 37(b), which pertains to failure to comply with a discovery order, for sanctions against AMPI for allegedly frustrating discovery by refusing to produce material documents. The United States chose not to file a similar Rule 37(b) motion, electing instead to participate only in civil discovery relating to the private plaintiffs' motions, which are still pending before Chief Judge Oliver. On August 13, 1974, the United States and AMPI filed a proposed consent decree in the Government's suit. Chief Judge Oliver approved the decree on April 30, 1975. *See United States v. Associated Milk Producers, Inc.*, W.D.Mo., 1975, 394 F.Supp. 29, aff'd, 8 Cir., 534 F.2d 113, *cert. denied sub nom.*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). This settlement notwithstanding, attorneys from the Antitrust Division of the United States Department of Justice initiated the instant grand jury investigation of AMPI on February 10, 1975 in the United States District Court for the Western District of Texas. Chief Judge Spears supervised the grand jury. The Government directed its investigation to alleged obstruction of justice by AMPI in the discovery stages of the various civil antitrust suits. The Government served AMPI with a subpoena *duces tecum*, directing it to appear before the grand jury and produce thirteen different categories of documents. AMPI countered by filing motions to quash or modify the subpoena and to stay the grand jury investigation, as well as motions for an evidentiary hearing and an in camera inspection of documents purporting to grant authority to the Antitrust Division attorneys to conduct the grand jury investigation. Chief Judge Spears denied the motions on February 19, 1975 and denied reconsideration of the motion to stay on May 6, 1975.

The grand jury was discharged on August 6, 1976. It did not return an indictment. However, in a letter to the district court, it recommended that the court retain custody of the transcripts of the grand jury proceedings and those personal records of individuals, such as tax returns and calendars, received by the grand jury. It recom-

---

4. The order of November 4 stated:

On this the 4th day of November, 1976, the National Farmers' Organization (NFO) having moved the Court for permission to intervene in this proceeding and the Associated Milk Producers, Inc. (AMPI) having opposed said motion; and it appearing that NFO should be permitted to intervene under Rule 24(a), Federal Rules of Civil Procedure, it is, therefore,

ORDERED that NFO's motion to intervene be GRANTED.

Entered this the 4th day of November, 1976.

mended further that the business files and records of AMPI received by the grand jury "be made available to other courts pursuant to an appropriate Rule 6(e) motion."[5] The Government filed a statement indicating it had "no objection to the entry of such order as the Court deems appropriate to make the grand jury subpoenas, transcripts and documents available to Chief Judge Oliver for such use as he deems appropriate in connection with the [private plaintiffs'] Rule 37 motions and the trial of the JPML 83 cases." Accordingly, the district court on August 25, 1976 ordered that the "grand jury subpoenas, transcripts and documents . . . be disclosed to the United States District Court for the Western District of Missouri for such use in pending proceedings as that Court deems appropriate." AMPI moved the court to reconsider and it did. On October 1, 1976, Chief Judge Spears modified his order of August 25 and directed the clerk to send Chief Judge Oliver only an inventory of the grand jury materials for his in camera inspection and to forward to him any materials for which he found a "compelling need." The district court stayed its order, however, pending this appeal. Meanwhile, The National Farmers' Organization, Inc., one of the private plaintiffs in JPML Docket No. 83, moved the district court to intervene as of right in this controversy pursuant to Fed.R. Civ.P. 24(a)(2).[6] The district court granted its motion on November 4, 1976.

On appeal AMPI raises numerous objections to the district court's orders of February 19, May 6, October 1, and November 11. AMPI contends that the district court erred in issuing its first two orders because the Department of Justice initiated the grand jury investigation in bad faith "for improper purposes" and because the Assistant Attorney General in charge of the Antitrust Division was without authority to appoint attorneys to conduct a grand jury investigation relating to obstruction of justice allegations. With respect to the third order, AMPI contends that Chief Judge Spears committed numerous procedural and substantive errors of law in transferring an inventory of the grand jury materials to Chief Judge Oliver.[7] Finally, AMPI contends that the fourth order was erroneous because The National Farmers' Organization, Inc. is not a proper candidate for intervention under Fed.R.Civ.P. 24(a)(2).

## II. The Question of Appealability

We first consider whether AMPI's appeal is properly before this Court in light of the final judgment requirement of 28 U.S.C. § 1291. Section 1291 provides:

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the

---

**5.** Fed.R.Crim.P. 6(e) provides in relevant part:

Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

**6.** Rule 24(a)(2) provides:

Intervention of Right. Upon timely application anyone shall be permitted to intervene

in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**7.** As relief from these three alleged erroneous orders, AMPI requests that we remand the case to the district court with directions to return AMPI's subpoenaed documents and to expunge the other grand jury materials. Alternatively, AMPI requests that we remand with directions to hold an evidentiary hearing and an in camera inspection to allow AMPI to show the Government's alleged misuse of the grand jury and the alleged absence of prosecutorial authority by the Antitrust Division attorneys.

District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

■ The final judgment rule has been a part of federal appellate review since the First Judiciary Act, which limited appellate review to "final judgments and decrees." Act of Sept. 24, 1789, §§ 21, 22, 25, 1 Stat. 73, 83–85. But for one temporary exception,[8] finality continued to be a prerequisite to appealability until Congress passed the Evarts Act in 1891, which provided for review of interlocutory orders "granting or continuing" injunctions. Act of March 3, 1891, § 7, 26 Stat. 826, 828. From that initial grant has evolved 28 U.S.C. § 1292, presently the principal statutory authority for appeals from interlocutory orders.[9] Nonetheless, the final judgment requirement continues in 28 U.S.C. § 1291 as the dominant rule of federal appellate practice. Justice Frankfurter articulated this fact in *Cobbledick v. United States,* 309 U.S. 323, 324–25, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940):

> Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all. Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just

claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate review of the component elements in a unified cause.

*See, e. g., Di Bella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962); *Diamond Shamrock Oil & Gas Corp. v. Comm'r of Rev.,* 8 Cir., 1970, 422 F.2d 532, 534; J. Moore, B. Ward & J. Lucas, 9 *Moore's Federal Practice* ¶ 110.06 at 105–07 (1975); Redish, *The Pragmatic Approach to Appealability in the Federal Courts,* 75 *Colum.L.Rev.* 89 (1975); Note, *The Finality and Appealability of Interlocutory Orders—A Structural Reform Toward Redefinition,* 7 *Suffolk U.L.Rev.* 1037, 1039 (1973). *See also Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 180–82, 75 S.Ct. 249, 252–53, 99 L.Ed. 233 (1955).

Predictably, the determination of what constitutes a final judgment has been no easy task. Justice Black once stated that "final" in the context of appealability is an "abstruse and infinitely uncertain term." *Will v. United States,* 389 U.S. 90, 108, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) (Black, J., concurring). *See McGourkey v. Toledo & Ohio Central Railway Co.,* 146 U.S. 536, 544–45, 13 S.Ct. 170, 172, 36 L.Ed. 1079 (1892). Three Supreme Court decisions in particular, however, provide a framework in which to contend with the problem of defining "final judgment."

**8.** In 1875 Congress gave the Supreme Court appellate jurisdiction over orders of the federal circuit courts of appeals dismissing actions or remanding them to state courts for want of jurisdiction or for jurisdiction improperly or collusively effected. Act of March 3, 1875, § 5, 18 Stat. 470, 472. Congress repealed this grant in 1887. Act of March 3, 1887, § 6, 24 Stat. 552, 555.

**9.** To be appealable a district court order must be final or it must fall into one of those specific classes of appealable interlocutory orders pro-

vided for in 28 U.S.C. § 1292. The final judgment rule is also subject to statutory exceptions that permit appeals as of right from certain interlocutory orders. *See, e. g.,* 11 U.S.C. § 47 (authorizing appeals in "proceedings in bankruptcy"); 18 U.S.C. §§ 1404 and 3731 (authorizing interlocutory appeals by the Government from pretrial orders suppressing evidence). Additionally, the All Writs Statute, 28 U.S.C. § 1651, can serve as a vehicle for obtaining review in appropriate cases of normally nonappealable interlocutory orders.

In *Cobbledick v. United States, supra,* the Court held that a district court order denying motions to quash subpoenas *duces tecum* directing three witnesses to appear before the grand jury was not an appealable final judgment. The Court established a stringent standard of finality, one that seemingly encompassed an entire case including collateral parties and issues. Regarding finality as "the means for achieving a healthy legal system," Justice Frankfurter, writing for a unanimous Court, stated that "[n]either a party nor a non-party witness will be allowed to take to the upper court a ruling where the result of review will be 'to halt in the orderly progress of a cause and consider incidentally a question which has happened to cross the path of such litigation. . . .'" 309 U.S. at 326, 60 S.Ct. at 541–42, *quoting Segurola v. United States,* 275 U.S. 106, 112, 48 S.Ct. 77, 79, 72 L.Ed. 186 (1927).

*Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), created an exception to the finality standard of *Cobbledick.* In *Cohen* the district court refused to apply a state statute requiring the plaintiff in a stockholder's derivative action to make a security deposit as a condition of proceeding with the suit.[10] The Court found this to be an appealable final judgment. First, however, Justice Jackson articulated the Court's continued support of the final judgment rule:

> The effect of [28 U.S.C. § 1291] is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal. . . .
>
> Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results.

337 U.S. at 546, 69 S.Ct. at 1225. In this case the district court order was held to be appealable because it fell

> in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

337 U.S. at 546, 69 S.Ct. at 1225–26. Moreover, the district court order presented "a serious and unsettled question," 337 U.S. at 547, 69 S.Ct. at 1226, which, if reviewed upon final disposition of the merits of the case, would work a serious hardship on the plaintiff:

> When that time comes, it will be too late effectively to review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably.

337 U.S. at 546, 69 S.Ct. at 1225. Finally, as if concerned that its deceptively simple finality test might become a mere talisman, the Court emphasized that, as in *Cohen,* section 1291 is to be given a "practical rather than a technical construction." 337 U.S. at 546, 69 S.Ct. at 1226, *citing Cobbledick v. United States, supra,* 309 U.S. at 328, 60 S.Ct. at 542, *United States v. River Rouge Improvement Co.,* 269 U.S. 411, 414, 46 S.Ct. 144, 145, 70 L.Ed. 339 (1926), *Bank of Columbia v. Sweeney,* 26 U.S. (1 Pet.) 567, 569, 7 L.Ed. 265 (1828).

This "practical" approach to finality was the touchstone of the Court's most recent definitive statement on the final judgment rule. In *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), the Court carved out another exception to the rule in holding to be final a district court order providing that the Jones Act supplied the exclusive remedy in plaintiff's wrongful death action. Justice Black stated:

---

**10.** The purpose of the statute was to make a plaintiff liable for all expenses and attorneys' fees of the corporate defendants if the plaintiff failed to make good his or her complaint and to entitle the defendants to indemnity before the suit could go forward.

[A] decision "final" within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. . . . And our cases long have recognized that whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone" of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a "practical rather than a technical construction."

379 U.S. at 152, 85 S.Ct. at 311, *citing Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 545, 546, 69 S.Ct. at 1225, 1226. The Court emphasized further that "in deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" 379 U.S. at 152–53, 85 S.Ct. at 311, *quoting Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950). In this marginal case of finality, the scales tipped in favor of review and against the usual result of nonappealability only because the questions presented were " 'fundamental to the further conduct of the case.'" 379 U.S. at 153, 85 S.Ct. at 311, *quoting United States v. General Motors Corp.,* 323 U.S. 373, 377, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945).

Using the framework provided by *Cobbledick, Cohen,* and *Gillespie* as our benchmark, we find that the district court orders of February 19, May 6, and October 1 are not final within the meaning of 28 U.S.C. § 1291. Accordingly, the appeal of these orders must be dismissed. This is, to be sure, one of those cases falling within "the 'twilight zone' of finality." However, the decisions of the Supreme Court and the lower courts' applications of those decisions indicate to us that the final judgment rule is still to be construed narrowly. Like most rules, it is subject to exceptions, as *Cohen* and *Gillespie* demonstrate. The flexibility

provided by these exceptions is a necessary ingredient of just decisions. *See, e. g., Litton Systems, Inc. v. Southwestern Bell Telephone Co.,* 5 Cir., 1976, 539 F.2d 418, 425–26. But if the rule is not to be emasculated, its exceptions must be carefully drawn and sparingly applied.

■ The district court's orders of February 19 and May 6 denying AMPI's motions to quash or modify the grand jury subpoena and to stay the grand jury investigation pending an evidentiary hearing and an in camera inspection, though "fully consummated decisions," are "but steps toward final judgment." The orders address questions which still remain "open, unfinished [and] inconclusive." *Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 546, 69 S.Ct. at 1225. The issues raised by AMPI, which are inextricably linked to the pending private treble damage antitrust actions known as JPML Docket No. 83, have not yet been finally resolved by the district courts involved in this matter. It is true, of course, that Chief Judge Spears has ruled with respect to AMPI's contentions. But Chief Judge Oliver has not. Should disclosure of the grand jury materials be authorized in the JPML Docket No. 83 pretrial proceedings, AMPI will have yet another opportunity to raise its contentions before Chief Judge Oliver. With such an effective mode of review still available to AMPI, and therefore such a significant distance in the road toward final judgment yet untravelled, this Court is reluctant to intervene now, particularly in light of the importance of AMPI's contentions in litigation pending in another more interested circuit. *Cf. Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952).

Additionally, in arguing that we should hear its appeal, AMPI has not demonstrated that later review will prejudice any of its rights, irreparably or otherwise. *See Barfield v. Weinberger,* 5 Cir., 1973, 485 F.2d 696; *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System,* 5 Cir., 1968, 404 F.2d 31, 33. *See generally*

*United States v. Wood,* 5 Cir., 1961, 295 F.2d 772, 777–78, *cert. denied,* 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962). Unlike the plaintiff in *Cohen,* it has failed to show satisfactorily that its appeal falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 546, 69 S.Ct. at 1225–26. *See, e. g., Blackie v. Barrack,* 9 Cir., 1975, 524 F.2d 891, 895–900, *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Barfield v. Weinberger, supra; Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.,* 2 Cir., 1972, 455 F.2d 770; *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System, supra. See generally Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 169–72, 94 S.Ct. 2140, 2148–50, 40 L.Ed.2d 732 (1974); *Litton Systems, Inc. v. Southwestern Bell Telephone Co., supra,* 539 F.2d at 425–27; *Diaz v. Southern Drilling Corp.,* 5 Cir., 427 F.2d 1118, 1122–23, *cert. denied sub nom.,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). Similarly, unlike the plaintiff in *Gillespie,* AMPI has failed to demonstrate that the questions presented by its appeal of these orders, even from a "practical" perspective, are " 'fundamental to the further conduct of the case,' " or, even from the same pragmatic perspective, that "the danger of denying justice by delay" in this case outweighs "the inconvenience and costs of piecemeal review." *Gillespie v. United States Steel Corp., supra,* 379 U.S. at 152–53, 85 S.Ct. at 311. *See, e. g., Kohn v. Royall, Koegel & Wells,* 2 Cir., 1974, 496 F.2d 1094; *New England Power Co. v. Asiatic Petroleum Corp.,* 1 Cir., 1972, 456 F.2d 183; *Clark v. Kraftco Corp.,* 2 Cir., 1971, 447 F.2d 933. *See generally Hines v. D'Artois,* 5 Cir., 1976, 531 F.2d 726, 730; *Jetco Electronics Industries, Inc. v. Gardiner,* 5 Cir., 1973, 473 F.2d 1228, 1231; *Fox v. City of West Palm Beach,* 5 Cir., 1967, 383 F.2d 189, 193–94.

■ The order of October 1 is not appealable at this time for many of the same reasons. In the October 1 order, Chief Judge Spears, pursuant to Fed.R.Civ.P. 6(e), directed that the clerk of court send an inventory of the grand jury materials to Chief Judge Oliver for his in camera inspection. Then,

> [i]n the event the transferee judge [Chief Judge Oliver] finds at any time that there is a compelling need for all or any part of the said grand jury subpoenas, transcripts and documents, and certifies that the transfer thereof is warranted, the Clerk shall forthwith transfer the requested material to the transferee judge.

Chief Judge Spears was careful to indicate in his order that he was not passing on the question of disclosure of the grand jury materials:

> Nothing set forth in this order, or stated in open court on this date, should be construed as any finding by this Court with respect to the relevancy or materiality of, or the need for, the said grand jury materials, it being the intention of this Court that all such matters shall be solely addressed to, and determined by, the transferee judge.

It is thus apparent that the district court order of October 1 was no more than a decision to permit Chief Judge Oliver to decide whether the materials should be disclosed in JPML Docket No. 83. This is precisely the type of "tentative, informal [and] incomplete" interlocutory decision that Congress in passing section 1291 intended to preclude from immediate review. *Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 546, 69 S.Ct. at 1225. *See Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 171, 94 S.Ct. at 2149. It is not now apparent whether any, all, or none of the grand jury materials at issue in this case will be disclosed in JPML Docket No. 83. No one has yet been aggrieved and no one will become aggrieved until Chief Judge Oliver acts. Until then there is no appeala-

ble final order.[11] Additionally, as in the case of its appeal from the February 19 and May 6 orders, AMPI has failed to demonstrate satisfactorily how its position comes within the ambit of *Cohen* and *Gillespie.* *See* the cases cited on pages 1299 and 1300 *supra.* Accordingly, review is not proper at this time.

Finally, we reach the question of whether the order of November 4, which granted the motion of The National Farmers' Organization, Inc. to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2), is appealable. It is well settled that "[a]n order allowing intervention is interlocutory and may not be appealed immediately." *In re Estelle,* 5 Cir., 1975, 516 F.2d 480, 484, *cert. denied,* 426 U.S. 925, 96 S.Ct. 2637, 44 L.Ed.2d 380 (1976). We therefore cannot entertain the appeal of this order.

Accordingly, AMPI's appeal of the district court orders of February 19, May 6, October 1, and November 4 is dismissed.

DISMISSED.

**11.** AMPI relies on recently decided *State of Illinois v. Sarbaugh,* 7 Cir., 1977, 552 F.2d 768, as support for its position that the October 1 order is appealable. *Sarbaugh* is remarkably similar to this case on its facts and issues with one critical exception. The order held appealable by the Seventh Circuit in that case was an order "holding that the requisite particularized showing of compelling necessity had not been made." 552 F.2d at 771. In this case Chief Judge Oliver has not yet even had the opportunity to reach the question of compelling need. For the same reason, *In re Biaggi,* 2 Cir., 1973, 478 F.2d 489, *Gibson v. United States,* 1968, 131 U.S.App.D.C. 143, 403 F.2d 166, and *United States v. Byoir,* 5 Cir., 1945, 147 F.2d 336, are also inapposite to this case.