In re **MIDWEST MILK MONOPOLIZA-TION LITIGATION.**

**Robert B. ALEXANDER et al., Plaintiffs,**

v.

**The NATIONAL FARMERS ORGANIZA-TION et al., Defendants.**

**Civ. A. No. 19191–1.**

United States District Court,
W. D. Missouri, W. D.

July 7, 1978.

Harry P. Thomson, Jr., George E. Leonard, Shughart, Thomson & Kilroy, Kansas City, Mo., for Mid-Am.

Sydney Berde, Sydney Berde, P. A., St. Paul, Minn., for CMPC.

Sidney Harris, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., Colvin A. Peterson, Jr., Watson, Ess, Marshall & Engass, Kansas City, Mo., for AMPI.

William A. Carey, Barnett, Alagia & Carey, Washington, D. C., for ARSPC.

John P. McKenna, Richard A. Green, Rowley, Green, Hochberg & Fairman, Washington, D. C., for NFO.

John E. Sarbaugh, Chief, Midwest Office, Antitrust Div., Dept. of Justice, Chicago, Ill., at the Court's request.

MEMORANDUM AND ORDERS GRANTING NFO's RULE 6(e) MOTION AND DIRECTING FURTHER PROCEEDINGS

### I.

JOHN W. OLIVER, Chief Judge.

This Court, at long last, is in a position to rule NFO's long pending Rule 6(e) motion for release of grand jury minutes filed September 24, 1976. That motion seeks "disclosure to NFO counsel of the transcript and exhibits of the 1975–2 Grand Jury which investigated AMPI in the Western District of Texas." The NFO motion further alleges that "this Court has control over the material in question pursuant to the order of Chief Judge Spears entered in the Western District of Texas on August 25, 1976."

*In re 1975–2 Grand Jury Investigation,* 566 F.2d 1293 (5th Cir. 1978), shows that on October 1, 1976, Chief Judge Spears reconsidered and modified the August 25, 1976, order referred to in NFO's pending Rule 6(e) motion. The relevant October 1, 1976, order is set forth in full in footnote 3 on page 1294 of 566 F.2d. That order became a final order when the Supreme Court denied *certiorari* on June 19, 1978.

On June 20, 1978, this Court directed counsel in the above case and counsel for the Antitrust Division of the Department of Justice to prepare, serve, and file their respective suggestions in regard to what procedures should be followed concerning that portion of Chief Judge Spears' October 1, 1976, order which provided that:

> In the event the transferee judge [Chief Judge Oliver] finds at any time that there is a compelling need for all or any part of the said grand jury subpoenas, transcripts and documents, and certifies that the transfer thereof is warranted, the Clerk shall forthwith transfer the requested material to the transferee judge.

NFO suggested in response to this Court's June 20, 1978, direction, that "this Court certify to the Clerk of the Western District of Texas, San Antonio Division, that transfer of all the grand jury transcripts and documents is warranted" and that, "upon this Court's receipt of the grand jury materials, they be made available to NFO counsel in this case."

AMPI attached to its suggestions a copy of a letter counsel for AMPI had written Chief Judge Spears on June 23, 1978, in which it requested that Chief Judge Spears hear a motion which AMPI had filed on November 29, 1976. In that motion AMPI requested an evidentiary hearing in regard to the manner in which Chief Judge Spears' order of October 1, 1976, had been implemented. AMPI also suggested that "if Chief Judge Spears holds an evidentiary hearing in response to AMPI's November 29, 1976, motion," it is possible that his

Order of October 1, 1976, may be modified or dissolved."[1] AMPI then suggested that:

Nevertheless, assuming that Chief Judge Spears' October 1, 1976 Order is not modified or dissolved, release of grand jury materials cannot be accomplished except through a showing of particularized and compelling need by motion under Rule 6(e), Federal Rules of Criminal Procedure. NFO has filed such a motion and AMPI has responded. It is now ready for ruling by the Court. . . .
If the Court decides that disclosure is appropriate, then certification should be made to the Western District of Texas of the compelling and particularized need, together with a specification of the documents that should be transmitted.

Mid-Am suggested that "the San Antonio Grand Jury materials are not relevant to this case unless the Court finds that there is some compelling need for examination of those materials" and that "the Grand Jury material should not be allowed to further clutter up this already complex case."

CMPC noted that it was not "directly involved in the controversy" concerning the grand jury materials but that it was "affected by any developments that may delay the processing and final disposition of the central issues of this case." CMPC further suggested that "NFO's effort to obtain access to the San Antonio grand jury documents is nothing more than an attempt to reopen discovery" and accordingly objected to NFO's use of the grand jury materials for any purpose in this case.

ARSPC, after reviewing the suggestions by the other parties, noted it was not directly involved and that the Court had received "ample suggestions for handling the matter."

The Antitrust Division took a position consistent with its stand in the Western District of Texas—namely, that it had "no objection to the entry of such order as the Court deems appropriate to make the grand jury subpoenas, transcripts and documents

available to Chief Judge Oliver for such use as he deems appropriate in connection with the [private plaintiffs'] Rule 37 motions and the trial of the JPML 83 cases." 566 F.2d at 1296. The Antitrust Division suggested that:

The threshold question is whether disclosure of the grand jury material is needed in disposing of the Rule 37 motion. If the Court finds that other procedures to dispose of that motion are adequate and there is no compelling need for disclosure of grand jury materials, no inquiry into the grand jury materials would be warranted.

The Antitrust Division further suggested that "if the Court finds that an inquiry into the grand jury materials is warranted . . [a]ll parties to the Rule 37 motion will be permitted to inspect the grand jury documents." In a footnote the Antitrust Division stated:

The showing of a compelling need for disclosure of grand jury documents appears to be less burdensome than the showing for disclosure of grand jury testimony. Where disclosure of documents is sought for their content and existence, that is, for their intrinsic value in furtherance of a lawful purpose rather than to learn what took place before the grand jury, such documents may not be matters "occurring before the grand jury" within the meanings of Fed.R.Crim.Pro. 6(e) [citations omitted].

The Antitrust Division is apparently of the view that the procedures which it believes should be followed in regard to documents produced before the Western District of Texas grand jury may be different from the procedures which should be followed in regard to the testimony of witnesses before the grand jury. The following suggestion made by the Antitrust Division at least implies that the Court should make an *in camera* inspection of the testimony of grand jury witnesses in order to determine what, if any, portion of such testimony should be disclosed:

---

1. Chief Judge Spears' order entered June 29, 1978, denying AMPI's November 29, 1976, motion without prejudice, eliminated any possibili-

ty that his Order of October 1, 1976, would be modified or dissolved.

If the court finds that the documents were not produced in compliance with the discovery program, were required to be produced in the discovery program, are material to the litigation, and are needed to dispose of the case on its merits, the parties (a) may use the documents in support of the Rule 37 motion and in the litigation of the case; (b) may have access to testimony, if any, of grand jury witnesses bearing on these documents after the Court has determined *in camera* the portions of the testimony to be disclosed; and (c) may use the portions of the testimony in interrogating witnesses who are deposed or who testify at a court hearing.

In connection with its recommended *in camera* inspection of at least the testimony of the grand jury witnesses, the Antitrust Division stated:

The Chicago Office, Antitrust Division, will provide the Court with the names of the grand jury witnesses, if any, who it believes gave testimony bearing on the documents, but suggests that the Judge's law clerk, or someone designated by the Court, read the testimony and suggest to the Court the portions of the transcripts that should be disclosed.

■ We are satisfied that we have jurisdiction of NFO's pending Rule 6(e) motion and that such motion should be granted. We find, however, that we are not in complete agreement with any of the suggestions made by the parties or by the Antitrust Division in regard to what procedures should be followed as a result of the entry of our interlocutóry order granting NFO's Rule 6(e) motion. We are of the view that our order of disclosure made pursuant to Rule 6(e) should, for the time being, be limited to disclosure to this Court, and to this Court alone, in order that it may personally make an *in camera* inspection of the grand jury materials in order to determine what further orders of disclosure may be appropriate under the circumstances.

We are grateful· for the assistance offered by the Antitrust Division and may make use of that assistance. We do not believe, however, that any examination of the grand jury material should be delegated to a law clerk or to anyone else who may be designated by the Court, as the Antitrust Division suggested. We agree with the Antitrust Division suggestion that the procedures to be followed in regard to the documents may be different from the procedures which should be followed in regard to the testimony of the witnesses, but we do not need to reach that question at this time. We want to look at the documents *in camera* before determining what procedures may be proper under the circumstances.

## II.

Rule 6(e) prohibits the disclosure of matters occurring before a grand jury except "only when so directed by the court preliminarily to or in connection with a judicial proceeding." Rule 6(e) has consistently been construed to authorize a district court other than the district court which impanelled the grand jury to rule a Rule 6(e) motion to permit disclosure. The suggestions filed in this Court by the Antitrust Division and by all parties show that no one has questioned this Court's jurisdiction to rule the pending Rule 6(e) motion under the circumstances of this case. Indeed, AMPI, the party most concerned, implicitly concedes this Court has jurisdiction to rule the pending Rule 6(e) motion under the circumstances of this case by its reliance in the Fifth Circuit upon *State of Illinois v. Sarbaugh,* 552 F.2d 768 (7th Cir. 1977), and by its unqualified statement in the suggestions it filed in this Court which we have quoted above.

*Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), establishes that Rule 6(e) is but declaratory of principles long recognized by Supreme Court and lower federal court decisions that disclosure is "committed to the discretion of the trial judge." The familiar Supreme Court cases cited in *Pittsburgh Plate Glass* were *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940), *United States v. Proctor & Gamble Co.,* 356 U.S.

677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), and *United States v. Johnson,* 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943).

The Supreme Court cases decided before *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), were the basis for the recognized rule that the discretion vested in the district judge ruling a Rule 6(e) motion should not be exercised in favor of disclosure unless the party seeking disclosure carries the burden of showing a "particularized need" or "compelling necessity" which outweighs the long established policy of secrecy of grand jury proceedings.

We have elsewhere stated in detail, *see* Part III of *United States v. National Dairy Products Corp.,* 262 F.Supp. 447, 452–53, (W.D.Mo.1967), aff'd in part and rev'd in part 384 F.2d 457 (8th Cir. 1967), that *Dennis* did not establish new principles or standards different from those long established in the earlier Supreme Court cases. The Annotation on *Inspection—Grand Jury Minutes,* 3 A.L.R.Fed. 29 (1970), however, shows that it is far easier to state the principles applicable to grand jury disclosure than to apply those principles to the varied and sometimes unique factual situations which are presented under the facts of a particular case.

It is not a difficult task to make the requisite finding of "particularized need" under the undisputed circumstances of this case. The Antitrust Division's suggestions filed at our request accurately state that one "threshold question is whether disclosure of the grand jury material is needed in disposing of the Rule 37 motion." That motion, filed by NFO early in 1974, sought sanctions against AMPI for alleged shortcomings in AMPI's document production in JPML Docket No. 83 and in this case.

We need not recite in detail the procedures directed and followed in connection with that Rule 37 motion other than to say that the stipulation of facts upon which that motion was to be determined was filed March 13, 1974, before the grand jury impanelled in the Western District of Texas commenced its investigation of AMPI in the Spring of 1975. Once the grand jury investigation was commenced, it became obvious to this Court and to counsel for NFO and AMPI that the determination of the Rule 37 motion was closely intertwined with the grand jury investigation in the Western District of Texas.

The briefs filed in support and in opposition to AMPI's motion for summary disposition of NFO's Rule 37 motion filed January 24, 1977, reflected NFO's contention that "there is light which probably will be shed upon these proceedings by the evidence gathered by the 1975–2 Grand Jury of the Western District of Texas, which was investigating AMPI's conduct with respect to this very litigation." NFO expressly incorporated by reference "its filings in this Court on its motion for disclosure of that evidence and the order entered thereon." AMPI, of course, took the position that it was improper for this Court "to delve into the records of the San Antonio Grand Jury" for the reason that "it is AMPI's position until the Court rules otherwise, the record on this Rule 37 motion consists of the joint stipulation of facts agreed to in March of 1974, plus the testimony of one witness taken at that March, 1974 hearing *and nothing else* " (emphasis ours).

The transcript of pretrial proceedings held November 15, 1976, reflects that this Court's consideration of the Rule 37 motion was being delayed by the stay order issued by the Court of Appeals for the Fifth Circuit in connection with Chief Judge Spears' order of October 1, 1976. After counsel for AMPI had advised the Court that the Fifth Circuit had granted a stay (p. 175 of November 15, 1976, transcript) we stated:

Now, for reasons which apparently are valid reasons to AMPI, it is obvious to this Court that you want to exhaust every possible legal ground, and I am not critical of you for doing it, to keep anyone from taking a look at documents which would establish, beyond any question, that nothing produced by AMPI to the West Texas Grand Jury and nothing as far as you know produced by any third party nor any testimony taken by that Grand Jury support any notion whatever

that AMPI withheld and destroyed and put in the shredder documents that they were obligated to produce in connection with this litigation.

Now, I can think of a great many ways in which you get some confirmation of your position, but I cannot conceive that it would be proper for AMPI to judge its own case and to say, "We make that assertion but we don't want anybody else to take a look at the documents." [p. 181 of November 26, 1976 transcript].

On page 183 of the November 15, 1976, transcript we forecast the action which we were not able to take until June 20, 1978. We there stated:

My present disposition, unless counsel can figure out something else, is to wait a reasonable period of time to see whether the Honorable Chief Judge Adrian Spears' order becomes a final order. If it does, I will probably call on counsel for suggestions as to what communication should be made and what procedure you think ought to be established and followed at that time.

And on page 188 of the November 15, 1976 transcript we stated:

I have difficulty in understanding why the parties don't devise easy procedures to set at rest suspicions that are lurking around and why AMPI would take any different position than the government took when it was charged with having instituted *United States v. AMPI* as a result of a part of wheeling and dealing in Watergate, but that is for AMPI's determination. If they want to run it the full way, we will run it the full way, but I have a strong suspicion that every court that is presented with the question is going to have a considerable curiosity as to what is in those documents.

■ We find and conclude that there is a compelling and particularized need for disclosure of the grand jury material in order for this Court to rule the Rule 37 motion and in order for it to determine whether AMPI made the discovery it was obligated to make under the pretrial orders and directions made in connection with this Court's processing of JPML Docket No. 83 and the case presently on trial. The first and obvious inquiry that must be made in connection with both questions is a determination of what documents AMPI actually produced during JPML Docket No. 83 discovery and a comparison of those documents with documents produced for the Western District of Texas grand jury. The fact, should it prove to be a fact, that more documents may have been produced for the grand jury does not by any means decide all the questions presented. But the ascertainment of such a fact is a necessary beginning point.

This Court cannot properly overlook the purpose for which the grand jury in Western District of Texas was impanelled. AMPI's response to NFO's Rule 6(e) motion, filed in this Court on October 18, 1976, conceded in its opening sentence that "[f]or more than a year, a grand jury in San Antonio, Texas, investigated whether any violation of federal law occurred during discovery of AMPI documents in this Court." The letter of appointment of John C. Danielson as a Special Attorney by the Assistant Attorney General, Antitrust Division of the Department of Justice, January 7, 1975, states the following:

The Department is informed that violations of federal criminal statutes may have been committed by persons representing Associated Milk Producers, Inc., in complying with the pre-trial discovery order in *U. S. v. AMPI, INC.*, 74 CV 80–W–1 (W.D.Mo.) filed February 1, 1972.

The Department has reason to believe that an indictable offense may have been committed and, accordingly, investigation and consideration by a grand jury seems appropriate.

The Antitrust Division vigorously opposed AMPI's motion to modify Chief Judge Spears' original order of August 25, 1976. In its final reply filed before Chief Judge Spears, the Antitrust Division stated:

Finally, in its third pleading filed in this cause (*AMPI Response to Reply . . . and Further Memorandum . . .,*

*etc.* dated September 10, 1976), AMPI explains what action it wishes of the Court. Not only does it request that all documents impounded from the grand jury at once be dispersed to their owners (*id.* at 14), but AMPI advocates also that:

All of the subpoenas and testimony transcripts should be suppressed and destroyed by this Court (*ibid*).

This prayer must come as a considerable shock to a Court charged with administering justice simply and fairly so as to ascertain the truth (Rule 2, Federal Rules of Criminal Procedure; Rule 1, Federal Rules of Civil Procedure; Rule 102, Federal Rules of Evidence). The United States opposes this motion, and respectfully urges reaffirmance of the Court's order of August 25, 1976.

And the Antitrust Division concluded its final reply by properly stating that:

Unless this Court's order of August 25 becomes operative, the· Western District of Missouri will never become aware of what took place in the JPML 83 discovery proceedings. The Government is not free, under the strictures of Rule 6(e), to make such a disclosure, and AMPI is obviously unwilling to do so, despite ABA Disciplinary Rule 7–102(B)(1). If the facts revealed to the grand jury are contrary to those represented in the District Court in Kansas City, it is obviously in the interest of justice that materials which may reveal such facts be disclosed to that Court if it chooses to see them, and as promptly as possible. Since any federal trial is a search for the truth, one litigant should not be entitled to unique access to (much less the power to suppress) testimony pertinent to that inquiry. While AMPI's knowledge may well be persuasive to the Court in Kansas City in making further disclosure it points up the public interest in making this grand jury's information available to that Court, to test, if it sees fit, what AMPI asserts (page 3) to be "vague and unsupported allegations."

There is still another separate and independent particularized need for disclosure under the most exceptional circumstances of this case. This case is in its second year of trial. While Phase I of the trial has been completed, the trial of Phase II has almost reached the point that NFO will have adduced all evidence known to it. But NFO cannot properly be required to close its case in chief on its claim against Mid-Am, AMPI, CMPC, and ARSPC until it is determined whether it may have a right to re-open discovery, dependent upon what may be revealed by examination of the grand jury material and other relevant and material circumstances which it may be necessary to develop. We find and conclude that this circumstance, standing alone, supports a finding of particularized need for the *in camera* disclosure to this Court which we shall order.

## III.

■ Neither Rule 6(e) nor the principles established by the Supreme Court cases which that rule codifies require that disclosure be made immediately to the party moving for disclosure. In other words, *in camera* examination by the Court under circumstances of a particular case is an appropriate and necessary exercise of discretion both for the purpose of ruling a motion for production and for the purpose of supervision of the process of production. *Dennis v. United States,* 384 U.S. 855, 874 and 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). In *National Dairy Products Corp., supra,* we stated our considered view of *Dennis* in regard to the use of *in camera* procedures as follows:

*Dennis* did not purport to ban *in camera* examinations by the trial judge. The established Second Circuit *in camera* examination impeachment procedure, first noted by the Supreme Court in both opinions in *Pittsburgh Plate Glass* by their respective citation of *United States v. Spangelet,* 2 Cir., 258 F.2d 338 (360 U.S. at 399 and 401, 79 S.Ct. at 1240 and 1241) was again noted in *Dennis. Dennis* stated with approval that the *in camera* examination feature of that impeachment procedure "may be useful in enabling the

trial court to rule on a defense motion for production to it of grand jury testimony" (384 U.S. at 874, 86 S.Ct. at 1851). [262 F.Supp. at 464]

We added the following in regard to a case involving alleged inconsistencies between trial and grand jury testimony of a particular witness:

*Dennis,* consistent with the fundamental rationale of all the earlier Supreme Court cases, recognized that if the trial judge in fact orders the grand jury transcript produced and if the trial judge in fact properly makes his required *in camera* examination for inconsistencies and properly finds none, his refusal then to permit inspection of the grand jury transcript by the defense is also proper. A defendant, of course, has the right to test on appeal the question of whether the trial court's judgment on what is essentially a factual question in regard to the existence or nonexistence of inconsistencies was right or wrong. Concepts of fairness and justice require no more. [*Id.* at 467]

We still adhere to the views we expressed over ten years ago and which we have applied in many cases, both civil and criminal, since that time. Any doubt about the available *in camera* procedure would seem to have been resolved by *United States v. Nixon,* 418 U.S. 683, 714, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1974), in which the Supreme Court in a different context stated that "[i]t is elementary that *in camera* inspection of evidence is always a procedure calling for scrupulous protection against any release or publication of material not found by the court, at that stage, probably admissible in evidence and relevant to the issues of the trial for which it is sought." Compare *United States v. Cammisano,* 546 F.2d 238 (8 Cir. 1976).

We believe that considerations of time, avoidance of delay, and recognition that disclosure should be kept under close judicial supervision and restricted to the least amount of disclosure necessary under the circumstances of a particular case require that our order of disclosure be limited at this time to our *in camera* examination of the grand jury material in order that we may determine what further orders, if any, should be made under the circumstances.

In closing, we reiterate for the record that our consideration of NFO's Rule 6(e) motion has been made without examination of any of the inventories forwarded to this Court pursuant to Chief Judge Spears' order of October 1, 1976, which was the subject of AMPI's November 29, 1976, motion, which was denied by Chief Judge Spears on June 29, 1978.

## IV.

For the reasons stated, it is

ORDERED (1) that NFO's Rule 6(e) motion should be and the same is hereby granted. It is further

ORDERED (2) that the disclosure ordered pursuant to Rule 6(e) shall at this time be limited to disclosure to the undersigned judge in order that he may personally make an *in camera* examination of the grand jury material so as to be in a position to make such other orders which may be necessary and appropriate under the circumstances. It is further

ORDERED (3) that this memorandum opinion and orders entered pursuant thereto shall constitute this Court's finding that there is a compelling need for *all* of the Western District of Texas grand jury subpoenas, transcripts, and documents, within the meaning of Chief Judge Spears' order of October 1, 1976, and shall constitute this Court's certification that the transfer of all that material is warranted under the circumstances. It is further

ORDERED (4) that a copy of this memorandum opinion and orders shall be immediately transmitted to Chief Judge Spears and to the Clerk of the Western District of Texas so that the transmittal of all grand jury materials shall be made as promptly as possible to this Court for its *in camera* examination.